IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-237

 No. COA20-452

 Filed 1 June 2021

 Franklin County, No. 16CRS051676

 STATE OF NORTH CAROLINA

 v.

 SHAWN MARTEZ MCKOY

 Appeal by Defendant from judgment and order entered 22 May 2019 by Judge

 Cy A. Grant, Sr., in Franklin County Superior Court. Heard in the Court of Appeals

 14 April 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Carole
 Biggers and Assistant Attorney General Eric R. Hunt, for the State-Appellee.

 The Green Firm, PLLC, by Bonnie Keith Green, for Defendant-Appellant.

 COLLINS, Judge.

¶1 Defendant, Shawn Martez McKoy, appeals a judgment entered upon his

 conviction of felony larceny and an order for restitution. Defendant argues that the

 trial court: (1) plainly erred by permitting the State’s four witnesses to offer lay

 opinions identifying an individual depicted in surveillance footage as Defendant;

 (2) erred by denying Defendant’s motion to dismiss for insufficient evidence; and,

 (3) erred by failing to consider Defendant’s ability to pay before ordering restitution.
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 The trial court did not err in admitting one witness’ identification of Defendant and

 did not plainly err in admitting identifications by the other witnesses. Because there

 was substantial evidence of each element of felony larceny and Defendant’s identity

 as the perpetrator, the trial court did not err in denying Defendant’s motion to

 dismiss. The trial court did not fail to consider Defendant’s ability to pay prior to

 ordering restitution, and therefore did not abuse its discretion.

 I. Procedural History

¶2 On 20 February 2017, Defendant was indicted on two counts of felony larceny.

 Defendant was tried before a jury in Franklin County Superior Court on 21 and 22

 May 2019. At the close of the State’s evidence, Defendant moved to dismiss both

 charges for insufficient evidence. The trial court denied Defendant’s motion.

 Defendant did not present any evidence and renewed his motion to dismiss, which

 the trial court again denied. The jury returned a verdict of guilty on the first count

 of felony larceny and not guilty on the second count. The trial court sentenced

 Defendant to 11 to 23 months in prison and ordered Defendant to pay $3,200 in

 restitution. Defendant gave timely notice of appeal in open court.

 II. Factual Background

¶3 In August 2016, William Mitchell owned and operated a catering company in

 Louisburg, North Carolina, adjacent to a Sheetz gas station. Mitchell owned a trailer

 containing various catering equipment used for his business and stored the trailer on
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 the business’s property adjacent to the Sheetz. Mitchell testified that he purchased

 the trailer near the end of 2014 for “[s]omewhere in the vicinity of $3500.”

¶4 Mitchell last saw the trailer around 1 August 2016. In the last week of August

 2016, he drove past the property and saw that the trailer was gone. He contacted the

 Louisburg Police Department and Detective Clifford Stephens met with Mitchell at

 the property.

¶5 Stephens examined the lot where the trailer was kept and found no physical

 evidence other than tire drag marks over a curb. He then requested that Cindy

 Jackson, a manager at the Sheetz, permit him to access the surveillance footage

 recorded by the store’s multiple cameras. Jackson allowed Stephens to review the

 footage, and Mitchell joined him. Stephens determined that the trailer was removed

 on the night of 25 August 2016 and asked Jackson to provide him with recordings

 taken from multiple cameras during a specific 15-minute time frame (“Sheetz

 Footage”). Jackson requested the Sheetz Footage from the Sheetz security office,

 which delivered a DVD containing it to Jackson. Jackson then provided the DVD to

 Stephens.

¶6 Both Mitchell and Stephens took still images of an individual depicted in the

 Sheetz Footage to show to their contacts. Stephens sent an image to Troy Wheeless,

 an agent with the North Carolina Department of Motor Vehicles license and theft

 bureau. Wheeless identified Defendant as the individual in the image. Mitchell also
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 compared a picture of Defendant from a DMV website or other government database

 with the still that he took from the Sheetz Footage and concluded that Defendant was

 the individual in the Sheetz Footage.

¶7 Mitchell, Jackson, Stephens, and Wheeless each testified for the State at trial.

 During direct examination of Stephens, the State played multiple portions of the

 Sheetz Footage for the jury. Mitchell described the Sheetz Footage as showing, at

 approximately 9:00 p.m. on 25 August: (1) an extended-cab silver truck pulling in to

 the Sheetz parking lot and parking in front of the store; (2) an individual getting out

 of the driver’s side of the truck and “hesitat[ing] as he appears to look over at the

 trailer”; (3) that individual, a “black male, average height, average weight, beard,

 mustache, close cut hair, a red shirt and khaki pants[,]” walking into the entryway of

 the Sheetz; (4) the individual walking through a hallway to the store’s bathroom;

 (5) the individual returning to the truck, starting it, and beginning to drive off; (6) the

 truck leaving the Sheetz parking lot, and exiting the view of the cameras, in the

 direction of the property where the trailer was stored; and, (7) the truck later

 returning to the view of the cameras and pulling out with the trailer in tow. The

 video did not show anyone else getting into or out of the truck while it was on the

 Sheetz property.

¶8 At trial, Mitchell, Jackson, Stephens, and Wheeless each identified the

 individual depicted in the Sheetz Footage as Defendant. Defendant raised only a
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 general objection to the identification by Jackson and did not object to the

 identifications by the other three witnesses.

¶9 The jury found Defendant guilty of larceny of the trailer, but not guilty of

 larceny of the catering equipment within the trailer. The trial court entered

 judgment and ordered restitution. Defendant appeals.

 III. Discussion

 A. Lay Witness Identifications

¶ 10 Defendant argues that the trial court erred by permitting the State’s witnesses

 to give lay opinion testimony identifying Defendant as the individual pictured in the

 Sheetz Footage.

¶ 11 Defendant acknowledges that he raised only a general objection to the

 identification by Jackson and did not object to the identifications by Mitchell,

 Stephens, and Wheeless. As Defendant concedes, the issue of whether the

 identifications were properly admitted is not preserved for appellate review. See N.C.

 R. App. P. 10(a)(1) (“[I]n order to preserve an issue for appellate review, a party must

 have presented to the trial court a timely request, objection, or motion, stating the

 specific grounds for the ruling the party desired the court to make if the specific

 grounds were not apparent from the context.”); State v. Jones, 342 N.C. 523, 535, 467

 S.E.2d 12, 20 (1996) (“A general objection, when overruled, is ordinarily not adequate

 unless the evidence, considered as a whole, makes it clear that there is no purpose to
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 be served from admitting the evidence.”).

¶ 12 Notwithstanding Defendant’s failure to properly preserve this issue, because

 Defendant specifically and distinctly contends that the admission of the

 identifications amounted to plain error, we will review the trial court’s admission of

 the identifications for plain error. See N.C. R. App. P. 10(a)(4) (“In criminal cases, an

 issue that was not preserved by objection noted at trial and that is not deemed

 preserved by rule or law without any such action nevertheless may be made the basis

 of an issue presented on appeal when the judicial action questioned is specifically and

 distinctly contended to amount to plain error.”).

¶ 13 “For error to constitute plain error, a defendant must demonstrate that a

 fundamental error occurred at trial.” State v. Lawrence, 365 N.C. 506, 518, 723

 S.E.2d 326, 334 (2012) (citation omitted). “To show that an error was fundamental,

 a defendant must establish prejudice—that, after examination of the entire record,

 the error ‘had a probable impact on the jury’s finding that the defendant was guilty.’”

 Id. (quoting State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). The plain

 error rule “is always to be applied cautiously and only in the exceptional case . . . .”

 Odom, 307 N.C. at 660, 300 S.E.2d at 378 (citation omitted).

¶ 14 “Under the North Carolina Rules of Evidence, the jury is charged with

 determining what inferences and conclusions are warranted by the evidence.” State

 v. Buie, 194 N.C. App. 725, 730, 671 S.E.2d 351, 354 (2009) (citation omitted).
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 “Ordinarily, opinion evidence of a non-expert witness is inadmissible because it tends

 to invade the province of the jury.” State v. Fulton, 299 N.C. 491, 494, 263 S.E.2d

 608, 610 (1980). A lay witness’s “testimony in the form of opinions or inferences is

 limited to those opinions or inferences which are (a) rationally based on the

 perception of the witness and (b) helpful to a clear understanding of his testimony or

 the determination of a fact in issue.” N.C. Gen. Stat. § 8C-1, Rule 701 (2019).

¶ 15 A lay witness may not give an opinion as to the identity of an individual

 depicted in surveillance images where the witness is “in no better position than the

 jury to identify [the defendant] as the person in the surveillance [images] . . . .” State

 v. Belk, 201 N.C. App. 412, 414, 689 S.E.2d 439, 441 (2009). In determining whether

 a lay witness is sufficiently qualified to give an opinion on the identity of a person

 depicted in surveillance images, we consider (1) the witness’s general level of

 familiarity with the defendant’s appearance; (2) the witness’s specific familiarity with

 the defendant’s appearance at the time the surveillance was taken, or at a time when

 the defendant was dressed in a similar manner to the individual in the surveillance;

 (3) whether the defendant had disguised his appearance at the time of the offense;

 (4) whether the defendant had altered his appearance before trial; and (5) the clarity

 of the surveillance images and the completeness with which the individual was

 depicted. State v. Hill, 247 N.C. App. 342, 346, 785 S.E.2d 178, 181-82 (2016); State

 v. Collins, 216 N.C. App. 249, 256, 716 S.E.2d 255, 260 (2011).
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

¶ 16 At trial, only Wheeless indicated that he had a general familiarity with

 Defendant. Wheeless testified that he was “familiar with” Defendant, had “previous

 dealings” with Defendant, and had “been in his personal presence[,]” even though

 “[p]robably weeks” had passed between the last time Wheeless saw Defendant and

 the day he identified Defendant in the still image provided by Stephens. Mitchell,

 Jackson, and Stephens each had no familiarity with Defendant’s appearance prior to

 seeing him in the Sheetz Footage. Mitchell testified that he did not know Defendant,

 nor did he have any contact with Defendant after the trailer was taken. Stephens

 testified that he had not seen Defendant in person prior to trial. Jackson offered no

 testimony indicating that she was familiar with Defendant.

¶ 17 None of the State’s witnesses testified to their specific familiarity with

 Defendant’s appearance at the time the trailer was taken, or with his appearance

 when dressed in a manner similar to the individual depicted in the Sheetz Footage.

 No evidence was presented that the individual in the Sheetz Footage had used a

 disguise, or that Defendant had altered his appearance between 25 August 2016 and

 trial. Finally, there is no indication of any defect in the clarity of the Sheetz Footage,

 and there are multiple instances in which the footage shows the individual in his

 entirety as he walks through the view of the store’s cameras.

¶ 18 The admissibility of Wheeless’s testimony is controlled by this Court’s decision

 in State v. Collins. In that case, the defendant argued that the trial court plainly
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 erred by admitting an officer’s lay opinion identifying the defendant as the person

 depicted in a surveillance video. Collins, 216 N.C. App. at 254, 716 S.E.2d at 259.

 The officer testified only that he “had had dealings” with the defendant. Id. at 256,

 716 S.E.2d at 261. This Court stated that “[w]e believe ‘dealings’ mean more than

 minimal contacts . . . however, we do note defense counsel could have questioned

 these ‘dealings,’ if so desired.” Id. at 257, 716 S.E.2d at 261. Based on the officer’s

 testimony concerning “dealings” with the defendant, this Court concluded that the

 officer “was familiar with defendant and would be in a better position than the jury

 to identify defendant in the videotape.” Id.

¶ 19 Similarly, Wheeless testified that he had “previous dealings” with Defendant.

 Wheeless also testified that he was “familiar with” Defendant and had “been in his

 personal presence[.]” Defendant did not question the basis of Wheeless’s claimed

 familiarity or the scope of these “dealings” on cross examination. Accordingly,

 Wheeless was qualified to give lay opinion testimony identifying the individual in the

 Sheetz Footage as Defendant. The admission of Wheeless’s testimony was not error,

 let alone plain error.

¶ 20 No evidence, however, supported a conclusion that Mitchell, Jackson, or

 Stephens were qualified to provide lay opinion testimony identifying Defendant as

 the individual in the Sheetz Footage. The trial court erred by admitting their

 identifications of Defendant.
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

¶ 21 Defendant contends that but for these erroneous identifications, “there was no

 evidence that [Defendant] committed the crime or was at the Sheetz store, and the

 jury likely would not have convicted him.” We disagree.

¶ 22 Defendant emphasizes that the trial court “instructed the jury that the video

 and screen shots were admitted only for the purpose of illustrating and explaining

 the witnesses’ testimony.” The DVD containing the Sheetz Footage was admitted

 “generally into evidence” by the trial court. The trial court instructed the jury,

 however, that “[p]hotographs and a video were introduced into evidence in this case

 for the purpose [of] illustrating and explaining the testimony of a witness. These

 photographs and video may not be considered by you for any other purpose.”

 Nonetheless, as discussed above, Wheeless’s identification of Defendant was based on

 his prior familiarity with Defendant and was properly admitted. The jury was

 permitted to consider the Sheetz Footage as illustrative of Wheeless’s identification

 and assess the accuracy of Wheeless’s identification.

¶ 23 Additionally, the State introduced several still images for the jury’s

 consideration. Among these were State’s Exhibit 5, “a picture of a gentlemen [sic] at

 the men’s and women’s restroom,” and State’s Exhibit 7, a known photograph of

 Defendant in 2014 taken from a DMV or other government database. During

 examination of both Stephens and Wheeless, State’s Exhibit 5 and State’s Exhibit 7

 were published to the jury simultaneously. The jurors therefore had an opportunity
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 to compare the images and draw their own conclusion as to whether Defendant was

 the individual in the Sheetz.

¶ 24 Because the admission of Wheeless’s identification was not erroneous, the

 Sheetz Footage illustrated Wheeless’s identification and permitted the jury to assess

 its accuracy, and the jury had the opportunity to draw its own conclusions based on

 still images admitted into evidence, we cannot conclude that the erroneous admission

 of identifications by Mitchell, Stephens, and Jackson “had a probable impact on the

 jury’s finding that the [D]efendant was guilty.” See Odom, 307 N.C. at 660, 300

 S.E.2d at 378. Consequently, Defendant cannot demonstrate prejudice, and the

 erroneous admission of these identifications did not amount to plain error.

 B. Sufficiency of the Evidence

¶ 25 Defendant next argues that the trial court erred by denying his motion to

 dismiss because the evidence was insufficient to support his conviction for felony

 larceny. We review a trial court’s denial of a motion to dismiss de novo. State v.

 Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In ruling on a motion to

 dismiss, “the trial court need determine only whether there is substantial evidence of

 each essential element of the crime and that the defendant is the perpetrator.

 Substantial evidence is that amount of relevant evidence necessary to persuade a

 rational juror to accept a conclusion.” State v. Winkler, 368 N.C. 572, 574, 780 S.E.2d

 824, 826 (2015) (internal quotation marks and citation omitted).
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 In deciding whether substantial evidence exists[, t]he
 evidence is to be considered in the light most favorable to
 the State; the State is entitled to every reasonable
 intendment and every reasonable inference to be drawn
 therefrom; contradictions and discrepancies are for the
 jury to resolve and do not warrant dismissal; and all of the
 evidence actually admitted, whether competent or
 incompetent, which is favorable to the State is to be
 considered by the court in ruling on the motion.

 State v. Hill, 365 N.C. 273, 275, 715 S.E.2d 841, 843 (2011) (quoting State v. Powell,

 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

¶ 26 Defendant was convicted of felony larceny of the trailer under N.C. Gen. Stat.

 § 14-72(a). “The essential elements of larceny are that the defendant ‘(1) took the

 property of another; (2) carried it away; (3) without the owner’s consent; and (4) with

 the intent to deprive the owner of his property permanently.’” State v. Campbell, 373

 N.C. 216, 221, 835 S.E.2d 844, 848 (2019) (quoting State v. Reid, 334 N.C. 551, 558,

 434 S.E.2d 193, 198 (1993)). “Larceny of goods of the value of more than one thousand

 dollars ($1,000) is a Class H felony.” N.C. Gen. Stat. § 14-72(a) (2016).

¶ 27 Defendant argues that the evidence admitted at trial “established only that

 [Defendant] was in the Sheetz store” and that “[t]here was insufficient evidence to

 support an inference that the individual depicted in the Sheetz surveillance video is

 the person who stole the trailer.” We disagree.

¶ 28 During the State’s case in chief, the trial court admitted the Sheetz Footage
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 into evidence, and the State played multiple clips of the footage.1 Mitchell and

 Stephens extensively narrated the contents of these clips without objection. As

 discussed above, each of the State’s witnesses identified Defendant as the individual

 in the Sheetz Footage. Though three of these identifications were erroneously

 admitted, they are still relevant in assessing a motion to dismiss. See Hill, 365 N.C.

 at 275, 715 S.E.2d at 843, (requiring the court, for purposes of a motion to dismiss for

 insufficient evidence, to consider “all of the evidence actually admitted, whether

 competent or incompetent, which is favorable to the State”). Additionally, the trial

 court admitted State’s Exhibit 5, a still image taken from the Sheetz Footage showing

 the suspect outside of the Sheetz bathroom, and State’s Exhibit 7, a known image of

 Defendant.

¶ 29 The evidence admitted at trial, viewed in the light most favorable to the State,

 and giving the State the benefit of every reasonable inference, tended to show:

 Mitchell purchased his catering trailer for approximately $3,500 in 2014. Mitchell

 parked the trailer on a lot next to a Sheetz gas station in Louisburg, North Carolina.

 Mitchell last saw the trailer around 1 August 2016. On the night of 25 August 2016,

 an extended-cab silver truck pulled up to the front of the Sheetz. Defendant exited

 1 The trial court was consequently permitted to consider the Sheetz Footage in ruling

 on Defendant’s motion to dismiss, despite the subsequent inconsistent instruction that the
 jury was to consider the Sheetz Footage only for illustrative purposes.
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 the truck, walked into the Sheetz, and went into the bathroom. After a few minutes,

 Defendant returned to the truck. Defendant drove the truck towards the exit of the

 Sheetz parking lot, braked, and backed up to the adjacent property where Mitchell’s

 trailer was parked. A few minutes later, Defendant drove the truck away with the

 trailer in tow.

¶ 30 Defendant argues that the evidence cannot support his felony larceny

 conviction because it shows only that Defendant had the opportunity to take the

 trailer. It is true “that a conviction cannot be sustained if ‘[t]he most the State has

 shown is that defendant had been in an area where he could have committed the

 crimes charged.’” Campbell, 373 N.C. at 221, 835 S.E.2d at 848 (quoting State v.

 Minor, 290 N.C. 68, 75, 224 S.E.2d 180, 185 (1976)). But crediting the in-court

 identifications and giving the State the benefit of every reasonable inference, a

 rational juror could conclude that Defendant was the sole occupant and driver of the

 truck and, without Mitchell’s consent, hitched Mitchell’s trailer—valued at over

 $1,000—to the truck and drove away with the trailer in tow, intending to deprive

 Mitchell of it permanently. Accordingly, substantial evidence of each element of

 felony larceny and Defendant’s identity as the perpetrator was presented. The trial

 court did not err by denying Defendant’s motion to dismiss.

 C. Restitution Order

¶ 31 Defendant argues that the trial court erred in ordering restitution because it
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 failed to consider Defendant’s ability to pay. Though Defendant did not object to the

 award of restitution before the trial court, “a defendant’s failure to specifically object

 to the trial court’s entry of an award of restitution does not preclude appellate

 review.” State v. Mauer, 202 N.C. App. 546, 551, 688 S.E.2d 774, 777-78 (2010)

 (citations omitted); see also N.C. Gen. Stat. § 15A-1446(d)(18) (2019).

¶ 32 “When sentencing a defendant convicted of a criminal offense, the court shall

 determine whether the defendant shall be ordered to make restitution to any victim

 of the offense in question.” N.C. Gen. Stat. § 15A-1340.34(a) (2019).

 In determining the amount of restitution to be made, the
 court shall take into consideration the resources of the
 defendant including all real and personal property owned
 by the defendant and the income derived from the property,
 the defendant’s ability to earn, the defendant’s obligation
 to support dependents, and any other matters that pertain
 to the defendant’s ability to make restitution, but the court
 is not required to make findings of fact or conclusions of
 law on these matters.

 N.C. Gen. Stat. § 15A-1340.36(a) (2019).

¶ 33 “A trial court’s judgment ordering restitution must be supported by evidence

 adduced at trial or at sentencing.” State v. Mumford, 364 N.C. 394, 403, 699 S.E.2d

 911, 917 (2010) (quotation marks and citation omitted). “[T]he award does not have

 to be supported by specific findings of fact or conclusions of law, and the quantum of

 evidence needed to support the award is not high. Rather, when there is some

 evidence that the amount awarded is appropriate, it will not be overruled on appeal.”
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 State v. Hillard, 258 N.C. App. 94, 97, 811 S.E.2d 702, 704 (2018) (citations omitted).

 “Whether the trial court properly considered a defendant’s ability to pay when

 awarding restitution is reviewed by this Court for abuse of discretion.” Id. at 98, 811

 S.E.2d at 705.

¶ 34 During trial, Mitchell testified that he had paid “[s]omewhere in the vicinity of

 $3500” for the trailer. The trial court was also informed, prior to ordering restitution,

 that Defendant was near the end of an active sentence and therefore unable to

 currently earn, Defendant has two children to support upon his release, and

 Defendant “plan[s] to go back to school and get a trade once he leaves from custody.”

 Defendant also filed an affidavit of indigency reflecting that he was in custody and

 had zero assets and zero liabilities as of 22 May 2019.

¶ 35 Given the information presented to the trial court, the amount of restitution

 ordered, and the terms of its payment, the trial court did not fail to consider

 Defendant’s financial resources as required by section 15A-1340.36(a) and thus, did

 not abuse its discretion. See State v. Tate, 187 N.C. App. 593, 597-98, 653 S.E.2d 892,

 896 (2007) (finding sufficient consideration of defendant’s financial resources where

 the trial court was presented with an affidavit of indigency and “was aware of

 defendant’s age, employment situation, and living arrangements”); State v. Person,

 187 N.C. App. 512, 531, 653 S.E.2d 560, 572 (2007) (The “relatively modest amount

 of restitution and the terms of its payment are not such as to lead to a ‘common sense’
 STATE V. MCKOY

 2021-NCCOA-237

 Opinion of the Court

 conclusion that the trial court did not consider defendant’s ability to pay.”), rev’d on

 other grounds, 362 N.C. 340, 663 S.E.2d 311 (2008).

 IV. Conclusion

¶ 36 Because Wheeless had general familiarity with Defendant, the trial court did

 not err in permitting him to identify Defendant as the individual depicted in the

 Sheetz Footage. Though the trial court erred in permitting the State’s other three

 witnesses to identify Defendant, in light of the other evidence presented, the trial

 court did not plainly err. The trial court did not err in denying Defendant’s motion

 to dismiss, and did not abuse its discretion in ordering Defendant to pay restitution.

 NO ERROR IN PART; NO PLAIN ERROR IN PART.

 Judges TYSON and CARPENTER concur.